**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIDELIA N. UZUOKWU ODUTOLA,<br>Plaintiff,<br>v.<br>CITY OF NEWARK, *et al.*,<br>Defendants. | No. 19-cv-11754<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion for summary judgment, ECF No. 95; ECF No. 95-3 ("Mot."), filed by defendants City of Newark and Director and Chief Financial Officer for the City of Newark Danielle A. Smith ("Smith") (collectively, "Defendants"). Plaintiff Fidelia N. Uzuokwu Odutola ("Plaintiff") opposed the motion, ECF No. 96 ("Opp."), and Defendants replied in support, ECF No. 107 ("Reply"); *see also* ECF Nos. 97, 102. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, Defendants' motion is **GRANTED**.

## I. BACKGROUND

### A. Factual History

This case concerns Plaintiff's belief that she should have been appointed to the position of Chief, Finance and Accounts (the "Position") for the City of Newark. In June 2015, the City of Newark provisionally appointed non-party Charles Kairu ("Kairu") to the Position pending a competitive examination. ECF No. 95-2 ("DSUMF") ¶ 1; ECF No. 103 ("PRSUMF") ¶ 1. According to Plaintiff, Kairu's selection was motivated by "politics" and "favoritism." PRSUMF ¶¶ 18–20. For instance, Plaintiff testified at her deposition that she believed that Kairu shared political interests with Jack Kelly ("Kelly"), then the Business Administrator for the City of

Newark. *Id.* ¶¶ 20, 23. After the examination held by the Civil Service Commission ("CSC"), Plaintiff ranked first on the list of six eligible candidates for permanent appointment. DSUMF ¶¶ 2–3; PRSUMF ¶¶ 2–3. Plaintiff informed the CSC that she was interested in the Position. DSUMF ¶ 4; PRSUMF ¶ 4.

Between 2017 and 2018, CSC twice ordered the City of Newark to make a permanent appointment from among the list of eligible and interested candidates, but the City did not act. DSUMF ¶¶ 5–8; PRSUMF ¶¶ 5–8. Plaintiff filed a request with the CSC to enforce those orders. DSUMF ¶ 13; PRSUMF ¶ 13. Finally, in 2020, the City of Newark appointed non-party Oluyinka Fadahunsi ("Fadahunsi")—who ranked third on the list of eligible candidates—to the Position. DSUMF ¶ 9; PRSUMF ¶ 9.

Three years later, CSC issued a final decision regarding Plaintiff's enforcement request, finding the request was moot following appointment of Fadahunsi. DSUMF ¶ 14; PRSUMF ¶ 14. The CSC decision also "emphasized" that regardless of its directive to the City of Newark, Plaintiff herself lacked any "vested right" in appointment because state law allows any of the top three candidates to be chosen pursuant to N.J.S.A. 11A: 5-6 and 4A: 4-4.8(a)3i. *Id.*; *see* ECF No. 95-4, Ex. B ("It is well established that . . . once the examination process has been initiated due to the appointment of a provisional employee or due to an appointing authority's request for a list to fill a vacancy, the appointing authority must make an appointment from the resulting eligible list if there are three or more interested and eligible candidates.").

**B. Procedural Background**

Plaintiff filed an initial Complaint on April 30, 2019, ECF No. 1, and an Amended Complaint on December 24, 2019, ECF No. 17 ("Am. Compl."). The Amended Complaint names as defendants the City of Newark and Smith, the Director and Chief Financial Officer of the City

of Newark, along with several state defendants (the "State Defendants")[1] and Eric Adams ("Adams"), the Assistant Finance Officer for the City of Newark. *Id.* The Amended Complaint asserts claims against all defendants for allegedly violating: (1) the Takings Clause of the Fifth Amendment to the United States Constitution; (2) Section 1983, 42 U.S.C. § 1983 by way of an underlying violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (3) Title VII of the Civil Rights Act of 1964,[2] 42 U.S.C. § 2000e, et seq.; and (4) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 5–11. The Amended Complaint also asserts *Monell* municipal liability purportedly against all defendants. *Id.* at 12.

The State Defendants filed a motion to dismiss, ECF No. 27, which was subsequently granted, ECF Nos. 41–42. Plaintiff also agreed to voluntarily dismiss Adams. ECF No. 94. The remaining Defendants then filed the present motion for summary judgment on May 6, 2024. ECF No. 95.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled

---

[1] The State Defendants include the State of New Jersey, the Civil Service Commission, Deirdre Webster Cobb, the Office of the Attorney General of the State of New Jersey, and Attorney General Gurbir Singh Grewal. *See* ECF No. 41.

[2] Although Plaintiff's Amended Complaint references Title VI, her allegations of employment discrimination are instead suited to a Title VII claim. *See Crenshaw v. Diamond State Port Corp.*, 201 F. Supp. 3d 473, 480 (D. Del. 2016) ("Title VII regulates the relationship between employers and employees."). Moreover, the briefing by both parties addresses Title VII, not Title VI. *See* Mot. at 16-19; Opp. at 12-13. The Court thus construes the Amended Complaint as instead pursuing a discrimination claim under Title VII.

to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). To meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[ ] the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## III. DISCUSSION

For the reasons stated below, the Court finds that there is no dispute of material fact and therefore grants summary judgment in favor of Defendants. The Court will address each claim in turn.

**A. Takings Claim**

To establish a claim under the Takings Clause of the Fifth Amendment, a plaintiff must show that the government interfered with her property. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[3] By its terms, the clause only applies where a person's "property" has been affected. "Property," in turn, refers only to interests that are "legally cognizable" and created by sources other than the Fifth Amendment, such as state law. *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151–52 (3d Cir. 2018) (citation omitted). So, a plaintiff asserting a Takings Claim must present some property interest as defined by state law—or another independent source—that is affected by the challenged governmental action. *Id.*

Plaintiff claims a property interest in the Position and contends she was deprived of this property by Defendants' decision to appoint a different candidate. Plaintiff states that she is entitled to the Position—constituting a legally cognizable property interest—because she was ranked first on the list of eligible candidates. Am. Compl. at 5–8; Opp. at 11–12. Defendants' appointment of another candidate is therefore alleged to be a taking of this property without compensation and a violation of the Takings Clause.

Defendants argue that Plaintiff cannot establish a takings claim because mere placement on a list of eligible candidates does not create a property interest. Mot. at 9–11. Defendants do not dispute that Plaintiff ranked first on the list of six eligible candidates for the Position. DSUMF ¶ 2. But Defendants state that according to state law, placement on a list of eligible candidates—even as the top ranked individual—does not create a legally cognizable interest in appointment.

[3] The clause applies to state and local governments through the Fourteenth Amendment. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022).

Mot. at 9–11. And because Plaintiff does not have a property interest that was affected, Defendants argue that she cannot make out a takings claim.

The Court agrees with Defendants and grants summary judgment in their favor. It is undisputed that following the CSC examination, Plaintiff was ranked first on a list of six eligible candidates for the Position. DSUMF ¶ 2; PRSUMF ¶ 2. According to New Jersey law, however, a person that passes a civil service examination and is placed on a list of eligible candidates does not thereby acquire a "vested right" in appointment. *Martin v. City of E. Orange*, No. 06-4293, 2009 WL 324187, at *5 (D.N.J. Feb. 9, 2009) (citation omitted); *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 716 (D.N.J. 2004). It makes no difference if that individual is the first-ranked candidate. *See Pollock v. City of Ocean City*, 968 F. Supp. 187, 190 (D.N.J. 1997) ("Although plaintiff took the civil service test, scored first, and enjoys preferential treatment as a veteran, he attained no entitlement to the position."); *Hernandez v. Borough of Fort Lee*, No. 09-1386, 2010 WL 2346646, at *5 (D.N.J. June 8, 2010). Plaintiff therefore did not acquire a legally cognizable property interest by her placement on the list of candidates. And without a property interest affected by the challenged action, Plaintiff cannot establish a takings claim. *See Swinka Realty Invs. LLC v. Lackawanna Cnty. Tax Claims Bureau*, 688 F. App'x 146, 149 (3d Cir. 2017).

Plaintiff argues that the orders issued by CSC to the City of Newark to appoint an eligible candidate support her asserted interest, specifically that CSC's issuance of orders to the City of Newark regarding its failure to make a permanent appointment is a "formal recognition" of her entitlement to the Position. Opp. at 7. But this claim is belied by CSC's final decision, which specifically stated that Plaintiff did not have a "vested right" to the Position:

> **[I]t is emphasized that Odutola does not have a vested right to an appointment.** Although she was ranked number one on the subject certification and indicated her interest in the position on May 22, 2017, the appointing authority may bypass her as a nonveteran pursuant to the "Rule of Three," which it did by appointing the

> third-ranked eligible effective February 2, 2017. In that regard, N.J.S.A. 11A:4-8, N.J.S.A. 11A:5-6, and N.J.A.C. 4A:4-4.8(a)3i allow an appointing authority to select any of the top three interested eligibles on an open competitive list, provided that disabled veterans and then veterans shall be appointed in their order of ranking ("Rule of Three"). The only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force. *See Nunan v. Department of Personnel*, 244 N.J. Super. 494 (App. Div. 1990).

ECF 95-4, Ex. B at 6. Thus, CSC's determination further supports this Court's finding.

**B. Equal Protection Claim**

To establish a claim under Section 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that she was discriminated against by a government actor. The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is a direction to state and local governments that people in similar circumstances must be treated "alike." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). A plaintiff thus sets forth a prima facie violation by demonstrating that because of governmental action, individuals "similarly situated" received "different treatment." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196–97 (3d Cir. 2009).[4]

Plaintiff claims that Defendants subjected her to disparate treatment by not appointing her to the Position and taking other adverse actions. Am Compl. ¶¶ 24–26; Opp. at 22. Defendants argue that Plaintiff cannot establish a violation because she has not presented evidence of other individuals in similar circumstances that were treated differently. Specifically, Defendants state that Plaintiff has not produced evidence of similarly situated individuals "who were also seeking promotions" and yet were handled "in a different fashion." Mot. at 14.

[4] Although not at issue here, the treatment must also be "purposeful." *Chambers*, 587 F.3d at 196.

The Court agrees with Defendants and grants summary judgment in their favor. Plaintiff has not produced evidence of either other individuals who were seeking the Position or that those individuals were treated differently. *See generally* PRSUMF. Plaintiff instead details only her own experience in being denied the Position. *Id.* And even here, Plaintiff does not point to any evidence to suggest that Defendants treated her any way *because of* her political status. *See generally id*. Instead, Plaintiff relies on her own belief and allegations that Kairu's interim appointment was politically motivated. *Id.* ¶¶ 16–20; *see also* Am. Compl. ¶ 10 (alleging that "the position was simply created as a political favor"). As such, Plaintiff cannot make out a prima facie claim for an equal protection violation—even under the "class of one"[5] theory.[6] *See Adams Parking Garage, Inc. v. City of Scranton*, 33 F. App'x 28, 32 (3d Cir. 2002) ("[B]ecause they presented no evidence that others, who were similarly situated, were treated differently, the district court properly entered summary judgment as to appellants' equal protection claims."); *Brittingham v. City of Camden*,

[5] Plaintiff's "class of one" theory also fails for the separate reason that she has produced no evidence that Defendants acted without a "rational basis." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011). For example, because Fadahunsi scored third on the exam, Fadahunsi was eligible for the promotion under New Jersey law. DSUMF ¶ 9; PRSUMF ¶ 9; *see* ECF No. 95-4, Ex. B.

[6] To the extent that Plaintiff attempts to raise an equal protection claim based on race, color, or religion, the Court notes that this argument only appears in her opposition to the motion for summary judgment. Opp. at 9. But Plaintiff cannot now amend her complaint to state an alternative claim for relief in opposition to the motion for summary judgment. *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008). In any event, those claims would similarly fail as a matter of law for a lack of relevant evidence. *See Fernandez v. Reihart*, No. 12-278, 2013 WL 1465505, at *12 (M.D. Pa. Apr. 10, 2013) ("To succeed on an equal protection claim, a plaintiff must show that: (1) he was treated differently (2) from similarly situated persons."). Plaintiff has not supplied evidence to support this theory, *i.e.*, evidence showing that she was treated differently because of her race, color, or religion. For instance, although her brief references "communications with Defendants," Opp. at 10, Plaintiff does not identify the specific communications in the record that are relevant to her claim, *see Jackson v. PNC Bank*, No. 15-1559, 2018 WL 513441, at *6 (W.D. Pa. Jan. 23, 2018) ("[T]he Court is not required to craft arguments, sift through the summary judgment record, and/or locate documents that preclude summary judgment." (citation omitted)), *aff'd sub nom. Gethers v. PNC Bank*, 813 F. App'x 746 (3d Cir. 2020).

No. 07-190, 2009 WL 1410740, at *9 (D.N.J. May 18, 2009); *see also Alpha Painting & Constr. Co., Inc. v. Del. River Port Auth. of Pa. N.J.*, No. 116-5141, 2018 WL 3085208, at *6 (D.N.J. June 22, 2018) ("To prove a 'class of one' equal protection claim, a plaintiff must show: (1) *the defendant treated it differently from others similarly situated*, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." (emphasis added)); *see also, e.g.*, *DeSantis v. Harrisburg Area Cmty. Coll.*, No. 19-65, 2021 WL 825761, at *4 (M.D. Pa. Mar. 4, 2021) (granting summary judgment to defendants on class of one equal protection claim "[b]ecause Plaintiff [did not] show [that] she was treated differently from similarly situated individuals").

**C. Title VII Claim**

To establish a claim for discrimination under Title VII, a plaintiff must show that she was subject to an adverse action by her employer due to a legally-protected characteristic. Title VII provides that employers may not "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A prima facie claim under Title VII therefore requires a showing that plaintiff was subject to an adverse employment action—despite being qualified for the position she sought to attain—due to her membership in a protected class within an enumerated category. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013); *Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 620 (D.N.J. 2015). The action must also involve circumstances that provide for an inference of unlawful discrimination. *Ewell*, 94 F. Supp. 3d at 620.

As an initial matter, Plaintiff has not filed a charge with the EEOC and obtained a right to sue letter, which is a prerequisite to filing a Title VII claim in this Court. PRSUMF; Opp.; *see Lee v. Valvoline Instant Oil Change*, No. 21-12825, 2023 WL 6579004, at *3 (D.N.J. Oct. 10, 2023)

("Title VII requires claimants to file a charge with the EEOC and receive a Right to Sue letter from the EEOC prior to bringing claims in federal court."); *id.* (noting that "failure to exhaust [these] administrative remedies is an adequate basis to enter summary judgment"). Plaintiff claims that her Title VII claim is nonetheless saved by "[t]he doctrine of equitable tolling," which she argues "applies here [because] [she] was prevented from filing her claim in a timely manner due to Defendants' conduct and where she pursued her rights diligently once those obstacles were removed." Opp. at 13. Although equitable tolling may remedy Plaintiff's failure to timely file a charge with the EEOC, *see Robinson v. CRS Facility Servs., LLC*, No. 12-2693, 2015 WL 1969137, at *3 (D.N.J. Apr. 29, 2015) (noting that the EEOC-related prerequisites "are subject to equitable tolling under [three limited] circumstances"), it cannot remedy her failure to file a charge at all, *see Story v. Mechling*, 214 F. App'x 161, 163 (3d Cir. 2007) (affirming grant of summary judgment for defendant on Title VII claim because plaintiff "provided no evidence [that] he requested [a right to sue] letter" and thus "did not provide the District Court with any basis for excusing his failure to exhaust"); *Pearson v. Macon Hous. Auth.*, No. 06-148, 2007 WL 1100478, at *3 (M.D. Ga. Apr. 11, 2007) ("Plaintiff's absolute failure to file a charge with the EEOC cannot be excused by equitable tolling. It is only after a charge is filed with the EEOC that a plaintiff can claim equitable tolling to excuse her untimely filing."). Therefore, Plaintiff's Title VII claim is subject to dismissal for failure to satisfy these administrative prerequisites.

But even putting this threshold issue aside, Plaintiff's Title VII claim fails. Plaintiff claims she was unlawfully discriminated against because Kairu was selected for the interim position and because Fadahunsi, not her, was appointed to fill the Position. Am. Compl. at 10–11; Opp. at 18. Plaintiff asserts that these decisions were due to her status as "a minority." Am. Compl. at 10. Plaintiff also states that she was not appointed to the Position (either on an interim or permanent

basis) because of her "race, color[,] and religion." *Id.* Defendants argue that Plaintiff has not established a discrimination claim because the evidence she put forth only speaks to political discrimination, which is not covered by Title VII. Specifically, Defendants claim that the sole discrimination described by Plaintiff in her deposition was based on her political affiliation. Mot. at 17. Insofar as Plaintiff asserts a discrimination claim based on another characteristic, Defendants argue this is unsupported by the evidence. *Id.*

The Court agrees with Defendants and grants summary judgment in their favor. Plaintiff states that she believes she was passed up for the Position because of "politics." *See* PRSUMF ¶¶ 16–20. For example, Plaintiff testified that "Kairu's selection [for the interim position] was a 'political appointment' due to 'politics' and 'favoritism.'" *Id.* ¶ 18. And her opposition brief repeats the allegation that Plaintiff was not appointed because she does not "share similar political affiliations" with Defendants. Opp. at 12. By its terms, however, Title VII only applies to discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An adverse employment action due to politics therefore does not make a claim. *Devore v. Cheney Univ. of Pa.*, No. 11-274, 2012 WL 10322, at *4 n.11 (D.N.J. Jan. 3, 2012) ("[P]olitical affiliation discrimination . . . is not a proper basis of a Title VII claim."); *Lehr v. Nike IHM, Inc.*, No. 19-942, 2021 WL 1611720, at *14 n.10 (E.D. Mo. Apr. 26, 2021) ("Political affiliation is not protected by Title VII."). As to Plaintiff's claim of discrimination based on race, color, or religion, she has not provided evidence to support these allegations.

Plaintiff counters that Title VII forbids discrimination against a political affiliation that is tied to a protected characteristic, but she does not explain how that is relevant to her case. Plaintiff states that political discrimination is actionable when it is "closely linked" to a protected characteristic like race, color, or religion. Opp. at 12. Plaintiff has not put forth evidence, however,

that the political affiliation at issue is tied to any of those characteristics. In fact, Plaintiff does not identify the political affiliations allegedly shared by Defendants and Kairu. *See* PRSUMF ¶¶ 16–20 (describing "certain political circles" and "shared political interests"). And the Court declines to speculate as to any potential link between this unnamed affiliation and a protected trait. *See* *Nardella v. Phila. Gas Works*, 997 F. Supp. 2d 286, 297 (E.D. Pa. 2014) ("At the summary judgment stage, speculation cannot sustain claims of discrimination.").

**D. Due Process Claim**

To establish a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must show that she suffered a deprivation without available procedures for redress. The Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A plaintiff thus makes out a due process claim by showing she was deprived of "life, liberty, or property" and that the procedures to contest that deprivation did not amount to "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

Plaintiff responds that Defendants violated the Due Process Clause when they did not appoint her to the Position. Plaintiff states that she suffered a deprivation of property due to Defendants' "taking of the Position" and that she "did not receive a chance" to contest that taking. Am. Compl. at 11. Defendants assert that Plaintiff cannot establish a due process claim because she did not have a property interest in the Position. Defendants repeat their contention that Plaintiff's position on a list of eligible candidates does not create a "constitutionally protected interest" in appointment. Mot. at 20. Defendants argue that Plaintiff accordingly was not deprived of property when the Position went to someone else, and without a deprivation she cannot establish a due process violation.

The Court agrees with Defendants and grants summary judgment in their favor. As discussed, Plaintiff did not acquire a property interest in the Position by being on a list of six eligible candidates. *See Martin*, 2009 WL 324187, at *5 (granting summary judgment for defendant on Fourteenth Amendment claim where plaintiffs failed to establish a "property interest" in their promotion because they had an entitlement "to be considered for . . . promotion," not a "legal entitlement to" a promotion itself); *Antonelli*, 310 F. Supp. 2d at 716 ("Though Plaintiffs had a desire to become firefighters, they had no legitimate claim of entitlement. Even a candidate 'who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment.'" (citation omitted)). It makes no difference that Plaintiff was ranked first on that list. *See Pollock*, 968 F. Supp. at 190; *Hernandez*, 2010 WL 2346646, at *5. And because Plaintiff did not have a property interest in the Position, she was not deprived of property when Defendants selected another individual in accordance with New Jersey law. ECF No. 95-4, Ex. B ("[New Jersey law] allow[s] an appointing authority to select any of the top three interested eligibles on an open competitive list, provided that disabled veterans and then veterans shall be appointed in their order of ranking . . . . The only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force."). Without this deprivation, Plaintiff cannot maintain a due process claim,[7] and

[7] This applies with equal force to any procedural due process claim. Opp. at 14 (arguing that Plaintiff was deprived of her procedural due process right "to be heard 'at a meaningful time and in a meaningful manner'" because she was deprived of the Promotion "without a formal hearing or a sufficient process to contest the decision" (citation omitted)); *see Antonelli*, 310 F. Supp. 2d at 716; *Carrier v. City of Plainfield*, No. 07-2739, 2009 WL 3681896, at *8 (D.N.J. Nov. 4, 2009) ("In evaluating a procedural due process claim, we first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property. Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (quoting *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007))). Moreover, "[e]ven if [P]laintiff could

summary judgment in favor of Defendants is appropriate. *See Bridges v. Colvin*, 136 F. Supp. 3d 620, 650 (E.D. Pa. 2015) ("Plaintiff had no property interest in his position . . . and therefore suffered no deprivation of his due process rights when that position was lost.").

**E. *Monell* Liability**

Under *Monell v. Department of Social Services,* a municipality may be held liable for a constitutional violation that is caused by its own custom or policy. 436 U.S. 658, 694–95 (1978); *see L.A. Cnty. v. Humphries*, 562 U.S. 29, 36 (2010). But where a plaintiff has failed to show an underlying constitutional violation, *Monell* does not provide an independent basis for liability. *Gayeman v. Sch. Dist. of City of Allentown*, 712 F. App'x 218, 221 n.3 (3d Cir. 2017). Because the Court has granted summary judgment in favor of Defendants as to all of Plaintiff's constitutional claims, it therefore also grants summary judgment in favor of Newark on the *Monell* claim. *See Norcross v. Town of Hammonton*, No. 04-2536, 2007 WL 2085366, at *5 (D.N.J. July 17, 2007) ("Because there is no longer a claim of a federal constitutional violation, this Court grants summary judgment to the [defendant] on all *Monell* claims.").

**F. Defendant Smith**

Defendants are also entitled to summary judgment as to the constitutional claims against Smith for the additional reason that it is undisputed that Smith was not personally involved in the

establish a property or a liberty interest in [the] [P]romotion, [she] cannot show that the extensive administrative procedures available to [her] under New Jersey law fall short of the due process required by the Constitution." *Pollock*, 968 F. Supp. at 191 (citing N.J.S.A. § 11A:2–1 to 2–24, which allows individuals to file appeals with the Civil Service Commission); *see also Bright v. City of Chester*, No. 06-3654, 2007 WL 1775399, at *2 (E.D. Pa. June 19, 2007) ("The Third Circuit Court of Appeals has repeatedly held that 'in cases in which a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements.'" (citation omitted)). Indeed, Plaintiff availed herself of these procedures by filing an appeal with the CSC, DSUMF ¶ 14, and could have—but chose not to—appeal the CSC's decision to the Appellate Division, *see* Mot. at 21; N.J. Ct. R. 2:2-3(a)(2).

alleged conduct at issue. To impose liability on a government official for a constitutional violation, a plaintiff must show that the official was personally involved in the alleged violation. *Baraka*, 481 F.3d at 210 ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable.'" (citation omitted)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Here, Defendants have provided evidence that Smith was not involved in the contested appointment decision. *See* DSUMF ¶ 24. Namely, Smith testified in her deposition that she neither provided recommendations nor was a party to any conversations regarding the appointment. *See, e.g.*, ECF No. 95-4, Ex. D at 11:7–14:9. Although Plaintiff denies the truth of this testimony in her responsive statement of material facts, *e.g.*, PRSUMF ¶ 24, she does not provide evidence to the contrary, and it is therefore an undisputed material fact, *see DiCuio v. Brother Int'l Corp.*, 653 F. App'x 109, 113 (3d Cir. 2016) ("[A]n unsupported assertion does not create a genuine dispute of material fact."); *Aug. Uribe Fine Art, LLC v. Dartmilano Srl*, No. 22-3104, 2025 WL 3707125, at *1 n.1 (D.N.J. Dec. 19, 2025) ("Where facts in a party's statement are supported by evidence in the record *and denied by an opposing party without citation or conflicting evidence*, the Court has deemed those facts undisputed." (emphasis added)). Because it is undisputed that Smith played no role in the conduct at issue, this is another ground on which to grant summary judgment in favor of Smith on the constitutional claims against her.

Defendants are also entitled to summary judgment as to the Title VII claim against Smith for the additional reason that Title VII does not provide for individual liability. Title VII prohibits discrimination by employers but does not subject individual employees to liability for the treatment of their co-workers. *Shipman v. Delaware*, 381 F. App'x 162, 162 (3d Cir. 2010); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). Accordingly, Smith cannot be held liable under Title VII for the alleged conduct of the City of Newark; summary judgment is granted as to Smith for this

additional reason. *See Andrews v. Whittaker*, No. 13-4812, 2018 WL 6522918, at *3 (D.N.J. Dec. 12, 2018) ("Because Title VII does not impose liability on individual employees, even if that employee is a supervisor, Plaintiff's claim cannot proceed.").

## IV. CONCLUSION

For the reasons stated above, the Court grants summary judgment in favor of Defendants.

Accordingly, **IT IS** on this 30th day of September 2026,

**ORDERED** that Defendants' motion for summary judgment (ECF No. 95) is **GRANTED**; and it is further

**ORDERED** that the Clerk of Court shall mark this matter closed.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**